IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED

JAN 0 2 2018

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| AMERICAN RELIABLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>LAWRENCE LOCKARD, and KAREN JANE NELSON,<br><br>Defendants. | CV 17–04–M–DLC<br><br>ORDER |

Before the Court is Plaintiff American Reliable Insurance Company's

("American Reliable") motion for summary judgment. For the reasons explained

below, the Court denies the motion.

## BACKGROUND AND PROCEDURAL HISTORY

Lawrence Lockard ("Lockard") was employed by the United States Fish and

Wildlife Service ("USFWS") as a Regional Field Dive Officer. Karen Jane Nelson

("Nelson") also worked for the USFWS. On September 8, 2015, Nelson

accompanied Lockard into Quartz Lake in Glacier National Park to collect

information regarding lake trout. The trip entailed an overnight stay in a remote

USFWS cabin, and Lockard and Nelson slept in the same room in separate but

adjacent beds. Nelson alleged that Lockard knew she had taken sleep medication, waited for her to fall asleep, and then sexually assaulted her. Nelson claims that the assault caused her damages, including anxiety, embarrassment, humiliation, insomnia, nightmares, and emotional trauma.

On September 9, 2015, Nelson filed a civil Complaint (hereafter "Underlying Complaint") against Lockard alleging that he negligently proceeded with a sexual advance without her permission. Lockard tendered the Underlying Complaint to American Reliable and requested a defense and indemnification. During the relevant period of his employment with USFWS, Lockard was insured by American Reliable, policy No. LOG000313-7 (the "Policy"). The Policy is a standard "occurrence" based homeowner's policy which provides coverage for bodily injury and property damage. American Reliable filed this declaratory action and now seeks summary judgment arguing that the policy precludes coverage because the conduct alleged does not qualify as an "occurrence" under the Policy, and that five Policy exclusions further preclude coverage:

1.    "Expected or Intended Injury Exclusion";

2.    "Business Exclusion" which excludes coverage for bodily injury;

3.    "Sexual Molestation, Corporal Punishment or Mental Abuse Exclusion";

-2-

4.      "Assault and Battery Exclusion"; and

5.      "Punitive Damages Exclusion."

The bench trial in this matter is currently set for May 21, 2018.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson,* 477 U.S. at 255). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at

249.

**DISCUSSION**

The interpretation of an insurance contract is a question of law for the Court. *Babcock v. Farmers Ins. Exchange*, 999 P.2d 347, 348 (Mont. 2000). The Court will construe terms according to their usual, commonsense meaning. *Natl. Farmers Union Property & Casualty Co. v. George*, 963 P.2d 1259, 1261 (Mont. 1998). The interpretation should honor the objectively reasonable expectations of the insured. *Hanson v. Employers Mut. Cas. Co.*, 336 F. Supp. 2d 1070, 1075 (D. Mont. 2004). Any ambiguities regarding coverage are construed against the insurer. *Hanson*, 336 F. Supp. 2d at 1073. "An ambiguity exists when a contract taken as a whole is reasonably subject to two different interpretations." *Id.* (citation omitted); *see also Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). However, a policy provision is not ambiguous just because the parties disagree as to its interpretation, and "courts will not distort contractual language to create an ambiguity where none exists." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009).

## I. An "Occurrence" under the policy

American Reliable initially contends that there is no coverage under the Policy because the Underlying Complaint does not allege an "occurrence" which

-4-

would trigger a duty to defend and indemnify. American Reliable relies on *New Hampshire Ins. Group v. Strecker*, 798 P.2d 130 (Mont. 1990), for the proposition that all acts of sexual assault and molestation are "not accidental." Nelson claims that because the Underlying Complaint alleges negligence, it is covered under the Policy. Further, Lockard contends that under the Montana Supreme Court's recent holding in *Emplrs. Mut. Cas. Co. v. Fisher Building, Inc.*, 371 P.3d 375 (Mont. 2016), an "accident" may include intentional acts so long as the consequences of those acts are not objectively intended or expected from the standpoint of the insured.

According to the policy, an "Occurrence" is defined as:

. . . an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results, during the policy period, in:

      a. "bodily injury"; or

      b. "property damage".

(Doc. 1-1 at 16.) American Reliable claims that pursuant to *Strecker*, allegations of negligence and "alleged theories of negligence in [the] underlying complaint, both these theories are necessarily based upon the numerous acts of molestation which cannot be deemed negligent acts." 798 P.2d at 132. Thus, while negligence commonly triggers coverage under an insurance Policy, if the negligent act is

based upon an inherently intentional act then coverage does not exist.

In response, Lockard contends that the Montana Supreme Court's holdings in *Fisher* control the Court's analysis here. The Court agrees. In *Fisher*, the Montana Supreme Court held that an "accident" may include intentional acts so long as the consequences of those acts are not objectively intended or expected from the standpoint of the insured. 371 P.3d at 378. In reaching that conclusion, the Court instructs that an intentional act may nonetheless constitute an "occurrence" under a policy because the subsequent consequences may not have been intended or expected by the actor. *Id.* Thus, the following two-part test should be utilized when determining whether the conduct in question constitutes "an accident": "(1) whether the act itself was intentional; and (2) if so, whether the consequences or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Id.* at 379 (citing *Northwestern Nat. Casualty Co. v. Phalen*, 597 P.2d 720 (Mont. 1979).

The Ninth Circuit also recently relied upon *Fisher* in its decision in *Walden v. Maryland Cas. Co.*, 692 F. App'x 476, 477 (9th Cir. 2017). In *Walden*, the Ninth Circuit found that the "intentional acts" exclusion under the insurance policy did not preclude coverage because coverage may still exist if the intentional acts caused unintended or unexpected consequences to the victim.

In light of *Fisher* and *Walden*, the Court concludes that an "occurrence" under the Policy may include intentional acts if those acts resulted in unintended or unexpected consequences. Unlike in *Strecker* where the accused admitted to sexually assaulting his daughter for approximately ten years and knew he had a problem, here there is a factual dispute regarding whether Lockard's actions were negligent or intentional. At trial, if the Court were to find that the act was intentional, the Court must also weigh the evidence and determine whether Lockard's intentional conduct produced unintended and unexpected consequences to Nelson, and, if so, the extent of damages.

Therefore, the Underlying Complaint alleges an "occurrence" under the Policy.

## II. "Expected or Intended Injury", "Assault and Battery" and "Sexual Molestation, Corporal Punishment, or Physical or Mental Abuse Exclusion" exclusions

American Reliable further contends that even if the allegations in the Underlying Complaint constitute an "occurrence" under the Policy, coverage is still precluded due to certain exclusions. However, the "Expected or Intended injury", "Assault and Battery" and "Sexual Molestation, Corporal Punishment, or Physical or Mental Abuse Exclusion" exclusions do not apply.

Pursuant to *Fisher* and *Walden*, the "Expected or Intended Injury" exclusion

is not triggered if there is a possibility that the conduct had unintended and unexpected consequences to the victim. Initially, the parties dispute whether Lockard's actions were negligent or intentional, which presents a question of fact to be resolved at trial. (Docs. 17 at 9–10; 19 at 9–14.) If the Court finds the acts to be intentional in nature, Nelson claims that the consequences or resulting harm stemming from the actions could not have been intended or expected from Lockard's standpoint and coverage would apply. (Doc. 17 at 9–10.) The *Fisher* Court specified that intentional acts do not necessarily preclude coverage if there were unintended and unexpected consequences of the intentional acts. Therefore, because a question of fact exists regarding whether Lockard's actions were negligent or intentional and, if they were intentional, whether Lockard could have expected or intended that Nelson would then be retaliated against or otherwise subjected to a hostile work environment by her coworkers as a result of his conduct, summary judgment is not proper.

Next, American Reliable contends that the Underlying Complaint also alleges Lockard "assaulted" Nelson, which is precluded from coverage. (Docs. 15 at 18–19; Doc. 1-2 at 4.) The Assault and Battery Exclusion provides that coverage does not apply to:

>     A.      actual, threatened or alleged assault and/or battery committed

by any person, whether or not the actual or constructive consent or participation of any insured.

B. the failure of any insured or anyone else for whom an insured is legally responsible to prevent or suppress any such actual or threatened assault and/or batter; or

C. the negligent selection, employment, training, supervision, or retention of any person whose conduct is described in A and/or B above.

Assault and/or battery regarding A, B, and C above is not an "occurrence" as defined in this policy.

The Company shall have no duty to defend any claim or suit that includes any of the above claims or allegations regardless of the circumstances involved in the claim or suit, even though the allegations may be groundless, false or fraudulent.

(Doc. 1-1 at 14.) It is undisputed that the Policy does not define either "Assault" or "Battery." (Docs. 15 at 19; 17 at 15; 19 at 21.) Nelson contends that a plain meaning interpretation of the terms from the perspective of a reasonable consumer of insurance products includes that the acts be violent and successive. (Doc. 17 at 15–16.) Moreover, Lockard argues that even if his conduct qualified as an assault it would only be a negligent assault because he believed the sexual encounter to be consensual. Lockard also claims that because Nelson seeks recovery based on the aftereffects of the alleged assault—when Lockard conveyed to others that the interaction was consensual which caused Nelson to be subject to a hostile work

-9-

environment and retaliation (Doc. 1-2 at 5)—Lockard's communications to others within USFWS would be covered under the Policy because his statements are not an "assault."

The Court finds that there is a genuine issue of material fact regarding which acts—the sexual conduct and/or the statements made by Lockard to other USFWS employees—caused Nelson damages. Specifically regarding the assault exclusion, if the Court finds that the sexual conduct caused her damages, the Court must determine whether Lockard's conduct that evening was negligent or intentional. Furthermore, in viewing the factual evidence in the light most favorable to Nelson and Lockard, if the Court finds at trial that the sexual act was an intentional assault, it would also need to determine if there were unintended or unforeseen consequences of that intentional assault, and, if so, the extent of damages.

Additionally, American Reliable asserts that the Sexual Molestation exclusion applies because the Underlying Complaint alleges Lockard initiated a sexual advance and sexually molested Nelson. (Doc. 1-2 at 4.) The Sexual Molestation, Corporal Punishment or Physical or Mental Abuse Exclusion provides that coverage does not apply to:

A.      the actual, threatened or alleged:

1.     physical abuse or corporal punishment of any kind committed by any person, whether or not with the actual or constructive consent or participation of any "insured";

2.     emotional or mental abuse of any kind committed by any person, whether or not with the actual or constructive consent or participation of any "insured"; or

3.     sexual abuse; molestation; licentious, immoral or sexual behavior of any kind committed by any person, whether or not with the actual or constructive consent or participation of any "insured"; or

. . . .

(Doc. 1-1 at 6.) "Sexual abuse" and "sexual molestation" are not defined in the

Policy. Nelson argues that the sexual abuse exclusion is to be narrowly construed,

and that as a reasonable consumer of insurance, Lockard would not qualify his

actions as "sexual abuse" or "sexual molestation." (Doc. 17 at 17.) Further,

Nelson contends that "sexual abuse" or "sexual molestation" in their ordinary

meanings have an intent element, but that here the Underlying Complaint alleges

negligence. Similarly, Lockard argues that the Underlying Complaint includes

allegations that the alleged sexual advance was itself negligent, which would not

qualify as sexual molestation. Moreover, Lockard contends that the Underlying

Complaint references alleged statements or inferences conveyed by Lockard to

others regarding the consensual nature of Nelson and Lockard's interaction, which

if proven at trial to be true, represent a risk covered by the Policy.

Similar to the Court's analysis above regarding the assault exclusion, the Court finds that there is a genuine issue of material fact regarding whether Lockard's conduct in the USFWS cabin was negligent or intentional, and whether it qualifies as "sexual molestation" under the Policy. If it is found to be an intentional sexual molestation, then this exclusion should be construed in accordance with *Fisher*, and the Court would need to determine if there are unintended or unexpected consequences.

Consequently, based on the allegations of the Underlying Complaint questions of fact exist as to whether Lockard's actions were intentional or qualify as an "assault" or "sexual molestation" under the Policy. Here, the evidence produced by the parties permits many different conclusions. Thus, summary judgment is not proper.

## III.    "Business Exclusion"

Next, American Reliable alleges that Lockard was engaged in an occupation at the time of the alleged conduct and the Policy specifically excludes coverage for bodily injury arising out of or in connection with a business. (Doc. 15 at 16–17.) Nelson argues that even though the conduct occurred during an overnight stay in a USFWS cabin, Lockard's actions that night had nothing to do with the dive trip or

his capacity as a USFWS employee. (Doc. 17 at 11.) Lockard argues that although the Underlying Complaint implies that the alleged assault occurred while Lockard was acting within his trade or occupation, it is also states that the assault did not occur until after a period of relaxation, dinner and after the parties had retired to sleep, which would be covered under the Policy.

The Policy's Business Exclusion provides that coverage is excluded for:

. . .

**2. "Business"**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured located" or engaged in by an "insured", whether or not the "business" is owner or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, including a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business."

(Doc. 1-1 at 31). "Business," is defined as, "[a] trade, profession, or occupation engaged in on a full-time, part-time or occasional basis." (*Id.* at 15.)

American Reliable relies on *Reliance Insurance Company v. Fisher*, 521 P.2d 193 (Mont. 1974), for the proposition that the alleged conduct occurred when Lockard was engaged in a profession. In *Fisher*, a teacher struck a fellow teacher at school. Of significance, the parties stipulated that both teachers were working

at the school within school hours at the time of the incident while the claimant was disciplining a student from his class. *Id.* at 197. The Montana Supreme Court found that the altercation was "clearly connected with and related to school activities." *Id.* Thus, the business exclusion applied and there was no coverage under the insurance policy.

To the contrary, Nelson contends that in *Safeco Ins. v. Syth*, No. DV-96-171, 1998 Mont. Dist. LEXIS 685, *7 (Jan. 29, 1998)[1], Judge Prezeau of the Montana Nineteenth Judicial District found that "'Business' is an activity, not the physical location where an activity occurred." In *Syth*, two people operated a saloon on their residential property. *Id.* at *1–2. One evening, Mrs. Syth was awakened by a noise transmitted over the intercom from the saloon, and Mr. Syth got up out of bed and observed a figure moving around in the saloon. *Id.* Mr. Syth then left the residence and proceeded toward the saloon with a rifle to investigate, but forgot to put in his hearing aids which left him completely deaf. In the meantime, Mrs. Syth called the police. When the officer arrived he saw Mr. Syth standing outside the saloon with his rifle. *Id.* at *3. Due to Mr. Syth's hearing difficulties, confusion occurred and the officer and Mr. Syth fired shots at

---

[1] This is case unpublished and not controlling, but Nelson argues that is helpful to provide the Court with a similar factual situation where the business exclusion did not apply.

one another. Mr. Syth was killed. Based on these facts, Judge Prezeau found that while the intruder inside the saloon was likely attracted to the building because of the nature of its use, the Syth's activities that night had nothing to do with operating the bar. *Id.* at *7–8. Thus, the business exclusion did not apply. *Id.* at *8.

Here, issues of fact exist regarding whether Lockard was acting within the course and scope of his employment during the time the alleged conduct occurred. Because the alleged conduct occurred at night after a period of relaxation, a fact finder could conclude that although the events occurred inside a USFWS cabin, that Lockard was not engaged in his occupation at the time. However, this is a fact intensive inquiry to be determined at trial. Therefore, summary judgment is not proper.

## IV. Punitive Damages Exclusion

Finally, American Reliable contends that the Punitive Damages Exclusion precludes coverage for any claim of punitive or exemplary damages in the Underlying Complaint. The Punitive Damages Exclusion provides that:

> This insurance does not apply to any claim of or Indemnification for punitive or exemplary damages. If a suit seeking both compensatory and punitive or exemplary damages has been brought again you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or

> damages attributable to punitive or exemplary damages. This
> endorsement does not exclude wrongful death punitive damages.

(Doc. 1-1 at 3.) For support, American Reliable relies on Montana Code

Annotated § 33–15–317(1) which states that "[i]nsurance coverage does not

extend to punitive or exemplary damages unless expressly included by the contract

of insurance." (Doc. 15 at 22.) Lockard contends that even if the Policy does not

allow payment of punitive damages, if any portion of the Underlying Complaint

alleges facts which, if proven, would result in coverage, American Reliable has a

duty to defend the entire Underlying Complaint. (Doc. 19 at 26.)

The Court finds that the Policy excludes indemnification for punitive

damages. However, the Policy does require a defense for claims that may be

covered by the Policy. Because the Court has already found that there are claims

that qualify as an "occurrence," American Reliable has a duty to defend Lockard

in the Underlying Complaint.

## CONCLUSION

Based on the analysis above, the Court finds that there exists many fact

issues most appropriately developed at trial.

Accordingly, IT IS ORDERED that Plaintiff American Reliable's Motion

for Summary Judgment (Doc. 14) is DENIED.

Dated this __2nd__ day of January, 2018

Dana L. Christensen, Chief Judge
United States District Court