

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMERICAN RELIABLE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> LAWRENCE LOCKARD, and KAREN JANE NELSON, <br><br> Defendants. | CV 17–04–M–DWM <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

The Court held a bench trial on August 20, 2018. After hearing testimony and reviewing evidence admitted, the Court makes the following Findings of Fact and Conclusions of Law.

## JURISDICTION AND VENUE

1. Defendant Lawrence Lockard ("Lockard") is a resident of the State of Montana and was an employee of the United States Fish and Wildlife Service ("USFWS").

2. Defendant Karen Nelson ("Nelson") is a resident of the State of Montana and is an employee of USFWS.

3. American Reliable is an insurance company not domiciled in the State of Montana whose principal place of business is in Scottsdale, Arizona.

## FINDINGS OF FACT

### I. Lockard's Policy

4. At all relevant times, Lockard was insured by the American Reliable Insurance Policy No. LOG000313-7 (the "Policy"). (Doc. 1-1.)

5. The Policy issued to Lockard provides and defines standard "occurrence"-based homeowner's coverage for bodily injury and property damage.

6. The Policy contains and defines an exclusion for "Expected or Intended" bodily injury.

7. The Policy contains and defines a "Business" exclusion which excludes coverage for "bodily injury" arising out of or in connection with a "business" engaged in by an insured.

8. The Policy contains and defines a "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse Exclusion."

9. The Policy contains and defines an "Assault and Battery Exclusion."

### II. General Facts[1]

10. Lockard and Nelson were employees of the United States Fish and

---

[1] Most of these facts have been stipulated by the parties (Doc. 41). All other findings of fact are derived from witness testimony.

Wildlife Service during the night in question.

11. On September 8, 2015, Nelson hiked into Quartz Lake in Glacier National Park, accompanied and led by Lockard, to participate in a scuba dive to gather information regarding lake trout.

12. The scuba dive entailed an overnight stay in a remote USFWS cabin. Lockard and Nelson slept in the same room in separate, but adjacent beds. A third individual slept outside due to his sleep apnea and tendency to disrupt others within close quarters.

13. On the evening of September 9, 2015, following dinner and a period of relaxation, which included drinking wine, Defendants shared a hug and a kiss on the cheek. Lockard perceived all of the forgoing as possible flirtatious behavior and possibly an invitation for additional physical, sexual contact. (Witness Testimony, hereafter "WT".)

14. As explained below in the Conclusions of Law, Lockard's subjective mental state that evening is not determinative.

15. That night, before bed, Nelson took her prescribed sleep medication, Ambien, to assist her sleep.

16. Lockard knew Nelson had taken her sleep medication.

17. Lockard fell asleep for a period of time and woke up with his hand over his head and on top of Nelson's leg. Nelson was asleep as Lockard placed his

hand on her leg. Lockard proceeded to get into Nelson's bed and sexually molest her for several minutes before she awoke. When Nelson awoke, Nelson immediately jumped out of the bed, and Lockard returned to his bed. This was Lockard's first indication that his conduct was not consensual. (WT.)

18. Due to her having taken Ambien, and her inability to completely wake up, Nelson could not remember much of what had gone on while she had been asleep. (WT.)

19. The morning after the incident, Lockard and Nelson hiked out of the remote lake, and Lockard described to Nelson what had taken place while she was asleep.

20. Upon Nelson's return to work, she reported the incident to law enforcement and her supervisor. The USFWS instructed Lockard to have no contact with Nelson. Lockard was also instructed to not draw any attention to Nelson or the Quartz Lake incident.

21. After the incident, Lockard stated and/or implied to his and Nelson's coworkers that the encounter was consensual. (WT.)

22. Nelson believed her coworker, Sharon Hooley, treated her differently after the incident due to the action she had taken against Lockard. (WT.)

23. On September 29, 2015 and October 29, 2015, Lockard sent emails from his USFWS email address to several other USFWS employees that did not

mention the incident in any way and did not address Nelson directly, but Nelson was copied. (Docs. 42-1, 42-2.)

24. On October 29, 2015, Lockard retired from the USFWS.

25. In June 2016, Wade Fredenberg, a USFWS employee in the Kalispell sub-office, told people at the American Fisheries Society meeting that the event in the cabin between Lockard and Nelson was consensual. (WT.) Mr. Fredenberg was a friend of Lockard and was told at the behest of Lockard to make it known to the people at this meeting his side of the story—that the encounter was consensual.

26. In October of 2016 Nelson filed a civil Complaint (hereafter the "Underlying Complaint") in the Montana Federal District Court naming Lockard as a defendant. (CV 16-135-M-DWM, *Nelson v. Zinke et al.*, Doc. 1, Oct. 18, 2016).

27. Lockard's conduct during and after the sexual assault caused Nelson damages, including damages for emotional trauma and physical manifestations of injury. (CV 16-135-M-DWM, Doc. 1, Oct. 18, 2016, and WT.)

## CONCLUSIONS OF LAW

I. **General**

1. Federal Jurisdiction is proper because between American Reliable and Defendants there is complete diversity of citizenship. 28 U.S.C. § 1332(a).

2. The amount in controversy exceeds $75,000, because the Policy limits of Lockard's Policy exceed $75,000.

3. The claims giving rise to the allegations against Lockard took place in Glacier National Park. Lockard is a citizen of Montana and resides in Flathead County. Flathead County is part of the Missoula Division. L.R. 1.2(b)(5). Venue is proper in the United States District Court for the District of Montana, Missoula Division. L.R. 3.2(b).

4. Terms used in an insurance contract are to be construed according to their usual, commonsense meaning. *Natl. Farmers Union Property & Casualty Co. v. George*, 963 P.2d 1259, 1261 (Mont. 1998).

5. If the asserted claim is not covered by the policy, then the insurer has no duty to defend the insured. *Travelers Casualty and Surety Company v. Ribi Immunochem Research, Inc.*, 108 P.3d 469 (Mont. 2005).

6. The interpretation should honor the objectively reasonable expectations of the insured. *Hanson v. Employers Mut. Cas. Co.*, 336 F. Supp. 2d 1070, 1075 (D. Mont. 2004).

7. Sexual assault or molestation is an act which is, by its nature, intentional. *New Hampshire Ins. Group v. Strecker*, 798 P.2d 130, 132 (1990). Acts of sexual assault and molestation "are not accidental." *Id.*, 798 P.2d at 131.

8. Even though the Underlying Complaint alleges negligence, the Montana Supreme Court has held that sexual molestation cannot be negligent. *Strecker*, 798 P.2d at 132. The Court further found that courts do not focus on the actor's subjective intent to cause harm. *Id.*

9. In *Fisher*, the Montana Supreme Court explained that the policy language defining 'accidents' may include intentional acts if the damages were not objectively intended or expected by the insured." *Employers Mut. Cas. Co. v. Fisher Builders, Inc.*, 371 P.3d 375, 380 (Mont. 2016).

10. In *Fisher*, the Court stated that an "intentional act" is not "an occurrence" if: (1) the act itself was intentional, and (2) if the consequences or resulting harm stemming from the act was objectively intended or expected from the actor's standpoint. *Id.* at 379 (citing *Northwestern Nat. Casualty Co. v. Phalen*, 597 P.2d 720 (Mont. 1979). It therefore follows that an "intentional act" is "an occurrence" if: (1) the act itself was intentional, and (2) if the consequences or resulting harm stemming from the act was objectively unintended or unexpected from the actor's standpoint.[2]

---

[2] The Court acknowledges in its January 2, 2018 Order (Doc. 24) it incorrectly stated "…constitutes 'an accident'". The Court intended to say ". . . constitutes 'an intentional act'." (Doc. 24 at 6.) The Court clarifies the holding in *Fisher* in these Conclusions of Law.

11. The *Fisher* Court further explained that "[i]t would be a rare case indeed, as reflected in the absence of such cases in our precedent, where an insured would acknowledge that he intended to injure or cause harm to others. However, courts are well equipped to determine objectively what injuries could reasonably be expected to result from an intentional act." *Id.* at 379.

12. The Ninth Circuit also recently relied upon *Fisher* in its decision in *Walden v. Maryland Cas. Co.*, 692 F. App'x 476, 477 (9th Cir. 2017). In *Walden*, the Ninth Circuit found that the "intentional acts" exclusion under the insurance policy did not preclude coverage because coverage may still exist if the intentional acts caused unintended or unexpected consequences to the victim.

13. The Policy provides:

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured is legally liable. Damages include prejudgment interest awarded against an "insured"; and

> - Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

(Doc. 1-1 at 30.)

14. Under the Policy, an "Occurrence" is defined as:

> ... an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results, during the policy period, in:
>
> a. "Bodily injury"; or
>
> b. "Property damage".

(Doc. 1-1 at 16.)

## II. Act 1: The Sexual Assault

15. The Court concludes that Lockard's actions of sexually assaulting and molesting Nelson were intentional and the injuries she suffered such as emotional distress and PTSD were damages which were objectively expected by Lockard. Lockard's subjective expectations and intentions are not to be considered as part of the analysis according to *Fisher* and *Strecker*.

16. The Court finds that the "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse Exclusion" and the "Assault and Battery Exclusion" are to be construed in accordance with *Fisher* because they constitute intentional acts.

17. The Court concludes that there was not an occurrence as defined by the Policy.

18. Therefore, American is not required to provide indemnification or a defense to Lockard pertaining to the sexual assault event itself because it is an intentional act excluded under the Policy.

## II. Act 2: Statements Made by Lockard after the Sexual Assault

19. The Court concludes that Lockard intentionally made statements to Nelson the day after the sexual assault and that the damages she suffered because of these statements were damages which were objectively expected by Lockard.

20. The Court concludes that there was not an occurrence as defined by the Policy.

21. Therefore, American is not required to provide indemnification or a defense to Lockard pertaining to the statements made by Lockard after the sexual assault because they are intentional acts excluded under the Policy.

## III. Act 3: Lockard's Statements to Co-worker, and Act 4: The Emails

22. The Policy contains a Business Exclusion. In relevant part the "Business Exclusion" provides:

> **Coverages E and F do not apply to the following:**
>
> **2. "Business"**
>
> "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

> This Exclusion E.2. applies but is not limited to an act or omission, regardless of it nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

(Doc. 1-1 at 31.)

23. Under the Policy, "Business" means "[a] trade, profession, or occupation engaged in on a full-time, part-time or occasional basis." (Doc. 1-1 at 15.)

24. Montana Courts take an expansive view of the "business pursuits" exclusion, and hold that it applies to activities which are "continually or regularly conducted" in the primary occupation of the insured. *Heggen v. Mountain W. Farm Bureau Mut. Ins. Co.*, 715 P.2d 1060, 1062 (Mont. 1986).

25. The Court concludes that Lockard's statements to Sharon Hooley were made while he was employed by the USFWS.

26. The Court concludes that Lockard's statements were made during the course and scope of his employment.

27. The Court concludes that the emails sent by Lockard were sent from his government computer and government issued email address, while he was employed by the USFWS.

28. The Court concludes that these emails were sent by Lockard during the course and scope of his employment.

29. The Court concludes that Nelson's claims related to the hostility by her co-workers and Lockard's emails, including but not limited to, hostile work environment are excluded by the Policy's Business Exclusion.

**IV. Act 5: Lockard's Instructions to Mr. Fredenberg**

30. The Court concludes that Lockard's instructions to Mr. Fredenberg to inform the people at the American Fisheries Society meeting in June 2016 occurred sometime after his retirement from the USFWS and before the meeting in June 2016.

31. Therefore, the Court concludes that Lockard's instructions did not occur during the course and scope of his employment, and the Policy's Business Exclusion does not apply.

32. The Court finds that Lockard objectively did not intend to injure or cause damage to Karen with his instructions to Mr. Fredenberg.

33. Consequently, the Court finds that Lockard's instructions were intentional acts and that the damages Nelson suffered because of these instructions were damages which were objectively unintended and unexpected by Lockard.

34. The Court finds this Act is "an occurrence" under the Policy and coverage exists.

**ORDER**

Based on the foregoing Findings of Fact and Conclusions of Law,

IT IS ORDERED that the American Reliable Insurance Policy affords Lockard coverage for both defense and indemnity in relation to Act 5 asserted by Nelson against Lockard.

IT IS FURTHER ORDERED that Judgment shall be entered by the Clerk of Court in favor of Defendants Lockard and Nelson and against Plaintiff American Reliable Insurance Company.

DATED this 23rd day of August, 2018.

Dana L. Christensen, Chief Judge
United States District Court